THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEFFREY WAYNE HARRISON, Defendant-Appellant.

Third District   No. 3—88—0650

Opinion filed March 27, 1990.

HEIPLE, P.J., dissenting.

Dan W. Evers, of State Appellate Defender's Office, of Mt. Vernon, for
appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (Nancy Rink
Carter, of State's Attorneys Appellate Prosecutor's Office, of counsel), for
the People.

JUSTICE WOMBACHER delivered the opinion of the court:

The defendant, Jeffrey Wayne Harrison, entered a plea of guilty to the offenses of murder and home invasion (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), 12—11). The trial court sentenced him to a term of natural life imprisonment for murder and a concurrent extended term of 40 years' imprisonment for home invasion. The defendant appeals the length of his sentences.

The evidence presented to the defendant's sentencing hearing established that during the early hours of November 28, 1987, a man (Chasek) approached the defendant about committing a burglary to obtain money. The defendant agreed to participate. Chasek told the defendant that they were going to "break into an old lady's house, and that if she was home, she probably wouldn't hear," as she was "hard of hearing." The defendant and Chasek went to the victim's house. The defendant broke a window in the garage, and Chasek gained entry into the house.

The victim, 87-year-old Helen Fey, lived alone. Apparently Mrs. Fey heard the noise in the garage. After the two men entered the house, they encountered Mrs. Fey, who was standing between the kitchen and the living room. Chasek grabbed the victim and took her into the bedroom. He threw her on the bed and held her there. For approximately five minutes the defendant searched the victim's house for money while Chasek restrained the victim.

The defendant failed to locate any money and returned to the bedroom. The defendant then restrained the victim for approximately 10 minutes while Chasek searched the house. While the defendant was restraining the victim, he placed a pillow over her face for about 10 seconds to quiet her. After Chasek failed to locate any money, he returned to the bedroom. The defendant released the victim, and she started to get up off the bed. Chasek then shoved the victim to the bed and began striking her on the head with his fist. After Chasek hit the victim several times, the defendant indicted that Chasek had done enough and they should leave. The two left the victim in the bedroom and searched the house for another 10 minutes. The two then exited the house.

The autopsy report of the coroner's physician, Dr. John G. Dietrich, was admitted into evidence. The report stated that the cause of the victim's death was multiple head injuries. In addition, the report revealed that the victim had received multiple contusions on her forearm, hand, shoulder, and leg. The report further indicated that it was possible the forcible restraint of the victim had contributed to her death. However, the parties stipulated that Dr. Dietrich would testify

that he could not state with a reasonable degree of medical or pathological certainty that forcible restraint had contributed to the victim's death.

On appeal, the defendant first argues that the trial court erred in sentencing him to natural life imprisonment. He contends that not one of the aggravating factors under section 9—1(b) of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)) was present.

■ Section 5—8—1(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)) provides that a defendant may be sentenced to natural life imprisonment if the court finds present any of the aggravating factors listed in section 9—1(b) of the Code. Section 9—1(b)(6) lists as an aggravating factor:

"6. [T]he murdered individual was killed in the course of another felony if:

(a) the murdered individual:

(i) was actually killed by the defendant, or

(ii) received physical injuries personally inflicted by the defendant substantially contemporaneously with physical injuries caused by one or more persons for whose conduct the defendant is legally accountable under Section 5—2 of this Code, and the physical injuries inflicted by either the defendant or the other person or persons for whose conduct he is legally accountable caused the death of the murdered individual; and

(b) in performing the acts which caused the death of the murdered individual or which resulted in physical injuries personally inflicted by the defendant on the murdered individual under the circumstances of subdivision (ii) of subparagraph (a) of paragraph (6) of subsection (b) of this Section, the defendant acted with the intent to kill the murdered individual or with the knowledge that his acts created a strong probability of death or great bodily harm to the murdered individual or another; and

(c) the other felony was *** home invasion ***." (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6).)

Section 9—1(f) (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(f)) further provides:

"Proof.

The burden of proof of establishing the existence of any of the factors set forth in subsection (b) is on the State and shall not be satisfied unless established beyond a reasonable doubt."

We are of the opinion that the State met its burden of proof in regard to the elements of sections 9—1(b)(6)(a)(ii) and 9—1(b)(6)(c) (Ill.

Rev. Stat. 1987, ch. 38, pars. 9—1(b)(6)(a)(ii), 9—1(b)(6)(c)).

In regard to section 9—1(b)(6)(b) (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6)(b)), the State was required to prove beyond a reasonable doubt that "in performing the acts which *** resulted in physical injuries personally inflicted by the defendant on the murdered individual, *** the defendant acted with the intent to kill the murdered individual or with the knowledge that his acts created a strong probability of death or great bodily harm to the murdered individual."

■ The focus is on the defendant's state of mind at the time he was inflicting the physical injuries upon the victim. The inquiry is whether the defendant, at the time he was inflicting physical injuries on the victim, had the intent to either kill the victim or with the knowledge that his acts created a strong probability of death or great bodily harm to the victim.

■ In the instant case, it is uncontested that the only physical contact the defendant had with the victim was when he restrained her for approximately 10 minutes. During this time, the defendant also held a pillow over the victim's mouth for 10 seconds to quiet her. We do not believe that these actions evinced either an intent by the defendant to kill the victim or that the defendant acted with the knowledge that his actions created a strong probability of death or great bodily harm to the victim.

Accordingly, we reverse the trial court's finding that an aggravating factor existed and vacate the sentences of natural life imprisonment for the murder conviction and the concurrent extended term of 40 years' imprisonment for the home invasion conviction. The cause is remanded to the trial court for resentencing in accordance with this opinion.

We are of the opinion that because the issue may arise in the cause as remanded, we will address the defendant's second issue.

The defendant's second argument is that the trial court improperly considered the victim impact statements of the victim's children. The State responds that the defendant has waived this argument, because of his failure to object to the State's motion to take judicial notice of the statements and his failure to raise the issue in his motion to withdraw his guilty plea.

■ We agree with the State that the defendant's failure to fulfill those procedural prerequisites constituted a waiver of the defendant's right to raise this issue on appeal. (See *People v. Gardner* (1988), 172 Ill. App. 3d 763, 527 N.E.2d 155; *People v. Favelli* (1988), 176 Ill. App. 3d 618, 531 N.E.2d 386.) Nevertheless, we also find that the trial court did not err in taking judicial notice of the children's victim

impact statements. (See *People v. Cissna* (1988), 170 Ill. App. 3d 398, 524 N.E.2d 268.) Accordingly, the defendant's argument that his trial counsel was ineffective in not objecting to the statements is without merit.

For the reasons listed above, the judgment of the circuit court of Knox County is affirmed in part and vacated in part; and the cause remanded for resentencing.

Affirmed in part; vacated in part and cause remanded for resentencing.

SCOTT, J., concurs.

PRESIDING JUSTICE HEIPLE, dissenting:

In an English court, a man named Home was tried for slander in having accused a neighbor of murder. His exact words were: "Sir Thomas Holt hath taken a cleaver and stricken his cook upon the head, so that one side of the head fell upon one shoulder and the other side upon the other shoulder." The defendant was acquitted by instruction of the court, the learned judges holding that the words did not charge murder, for they did not affirm the death of the cook, that being only an inference. Thus, wrote Ambrose Bierce in illustrating the meaning of a legal technicality. A. Bierce, *The Devil's Dictionary*, 190 (1957).

This case involves the brutal murder of an 87-year-old handicapped woman during the course of a home invasion by two young thugs. Jeffrey Wayne Harrison, the defendant in this appeal, entered a plea of guilty to the offenses of home invasion and murder. Thereupon, the trial judge sentenced him to concurrent terms of 40 years' imprisonment for home invasion and to natural life imprisonment for murder.

A majority of this court chooses to reverse the sentences because they believe that the necessary aggravating factors detailed in the sentencing statute were not proven. I dissent.

First of all, the facts of the case. The handicapped victim, Helen Fey, aged 87, lived alone. She suffered from both visual and hearing impairment. In the early morning hours of November 28, 1987, the defendant Harrison and his friend Chasek, left a party and broke into Helen Fey's home in Abingdon, Illinois, with the intent to steal money. At the time of the crime, the defendant knew that Mrs. Fey was an elderly woman who was physically impaired in both vision and hearing.

Once inside the home, the two men encountered Mrs. Fey standing in a doorway. Chasek grabbed the victim, took her into the bedroom and threw her on the bed, physically restraining her for a time while the defendant searched the home for money. The defendant then went to the bedroom and forcibly restrained the victim while Chasek searched the home. The victim struggled with the defendant as he was holding her, so he placed a pillow over her face to quiet her. Thereafter, Chasek returned to the bedroom and the defendant let go of Mrs. Fey. At that time, Chasek, who was standing right next to the defendant, shoved Mrs. Fey back down on the bed and began hitting her in the head with his fist. After Chasek hit Mrs. Fey several times, the defendant told Chasek he had done enough and suggested they go. The two men then looked around the victim's living room for approximately 10 minutes before finally leaving the house. Mrs. Fey died from her injuries. The cause of her death was multiple head injuries. Additionally, she had received multiple contusions of the forearm, right hand, right shoulder, and right leg. The autopsy report stated that, "It is possible that the forcible restraint of the decedent could also have contributed to her death." It was stipulated, however, that the coroner's physician, Dr. Dietrich, would testify that he could not state with a reasonable degree of medical certainty that forcible restraint had contributed to the victim's death. The defendant entered guilty pleas to both home invasion and murder.

The sentence. After a sentencing hearing, the judge sentenced the defendant to a term of natural life imprisonment for murder and a concurrent extended term of 40 years' imprisonment for home invasion. On appeal, the defendant claims that the sentence of natural life imprisonment was contrary to law since the statutory aggravating factors under the Criminal Code were not present. A majority of this court agrees with the defendant. They find that the facts do not prove that the defendant acted either with the intent to kill the victim or with the knowledge that his acts created a strong probability of death or great bodily harm to the murdered individual.

The law. The penalty for first degree murder is a term of not less than 20 years and not more than 60 years unless certain other criteria are met. That is to say, unless the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty in the first instance. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1).) Or, in the second instance, certain enumerated aggravating circumstances were present. Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b).

Without even addressing the second category of statutory aggravating factors, it is apparent to me that the defendant's conduct in

this case constituted exceptionally brutal behavior and was wanton cruelty. That is enough to affirm the life sentence. It is correct, of course, that the trial judge did not refer to the defendant's conduct as constituting exceptionally brutal behavior and being wantonly cruel. The trial judge made no comment on that aspect of the case but instead commented on the other aggravating factors. Since, however, the defendant's conduct met the exceptionally brutal and wantonly cruel criteria, it is of no consequence that the trial judge did not point that out. It is well established that a reviewing court is not bound to accept the reasons given by the trial court for its judgment and may sustain it on other grounds. *Material Services Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382; *Luster v. Jones* (1979), 70 Ill. App. 3d 1019.

Beyond that, however, section 9—1(b)(6) of the Criminal Code provides for a life sentence for murder in the presence of aggravating factors, as follows:

"6. The murdered individual was killed in the course of another felony if:

(a) the murdered individual:

(i) was actually killed by the defendant, or

(ii) *received physical injuries personally inflicted by the defendant substantially contemporaneously with physical injuries caused by one or more persons for whose conduct the defendant is legally accountable under Section 5—2 of this Code,* and the physical injuries inflicted by either the defendant or the other person or persons for whose conduct he is legally accountable caused the death of the murdered individual; and

(b) in performing the acts which caused the death of the murdered individual or which resulted in physical injuries personally inflicted by the defendant on the murdered individual under the circumstances of subdivision (ii) of subparagraph (a) of paragraph (6) of subsection (b) of this Section, *the defendant acted with the intent to kill the murdered individual or with the knowledge that his acts created a strong probability of death or great bodily harm to the murdered individual or another;* and

(c) the other felony was one of the following: \*\*\* *home invasion* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6).

Unquestionably, the evidence produced at trial reveals that the trial court was well within its discretion to find that the factors listed in section 9—1(b)(6) were present and to impose a sentence of natural

life imprisonment on the defendant. It is clear from the record that the defendant forcibly restrained the 87-year-old victim for over 10 minutes and smothered her face with a pillow during the assault. The trial court could have properly inferred from these facts that the defendant's restraint caused the contusions to Mrs. Fey's forearms, right hand, shoulder, and leg. As the autopsy report stated, it is possible that the defendant's forcible restraint of the victim contributed to her death. It is also apparent from the record that these injuries were inflicted by the defendant substantially contemporaneously with the injuries the victim received at the hands of Chasek, for whose conduct the defendant is legally accountable. Immediately after the defendant released Mrs. Fey from his forcible restraint, the victim was hit repeatedly in the face by Chasek while the defendant stood looking on. Furthermore, it can be reasonably inferred from the facts that the defendant acted with the knowledge that his acts created a strong probability of great bodily harm to the frail 87-year-old woman. The defendant knew prior to the home invasion that Mrs. Fey was an elderly woman who was handicapped in both her vision and her hearing. Defendant's responsibility, accountability and control are also evinced by the fact that he stood idly by while Chasek beat the victim in the head, that when the defendant decided that Chasek had hit the defendant enough times, he told Chasek to stop and Chasek did stop, that when the defendant decided that Chasek had hit the defendant enough times, he told Chasek to stop and Chasek did stop, that when the defendant decided that he and Chasek should leave, he said so and they did leave. The entire home invasion and murder was a joint venture of equal culpability between Chasek and the defendant.

Thus, under a reading of section 9—1(b)(6), the trial court concluded that all of the factors listed in the statute were present. The trial court did not abuse its discretion in finding the factors set forth in that section and in imposing a sentence of natural life imprisonment.

Our supreme court has consistently held that it is not the function of the reviewing court to serve as a sentencing court. (*People v. Cox* (1980), 82 Ill. 2d 268.) It is the duty of the trial court to take into account all factors, both in aggravation and mitigation and to balance those factors against each other. (*People v. Powell* (1987), 159 Ill. App. 3d 1005.) Thereafter, it is within the trial court's discretion to determine the appropriate sentence. Neither, I would point out, is it the function of the reviewing court to usurp the executive function of the Governor, who has the sole right under the law to invoke executive clemency and to commute a proper sentence to something less.

Ill. Const. 1970, art. V, §12.

In the instant case, the defendant entered into a negotiated plea which resulted in the dismissal of four of the charges being brought against him. The trial judge then carefully considered all of the available evidence presented at the sentencing hearing. In aggravation, the trial judge found that the factors listed above were present. In accordance with his findings, the trial judge then determined that the defendant should be sentenced to natural life imprisonment for first degree murder. This was a just result.

For the reasons stated, I strongly dissent from the decisions of my colleagues that the sentence must be set aside and the cause remanded for resentencing. I point out to the trial judge who will reconsider the matter of an appropriate sentence in this case that the defendant is eligible for a life sentence under a finding of exceptionally brutal behavior and wanton cruelty even if a majority of this court will not support such a sentence on the second category of itemized aggravated circumstances.